Lotus J. Capozzoli, J.
Plaintiffs are the executors and trustees under the will of one Robert L. Ripley, who died May 27, 1949. They have brought this action to enjoin the defendants from disparaging or questioning plaintiffs’ title to certain trade-marks and for a judgment declaring that the corporate defendant has breached the license agreement under which said defendant was licensed by plaintiffs to use these trade-márks.
Beginning in about 1918 the said Robert L. Ripley originated, produced and drew cartoons depicting odd and unusual facts gathered by him, to which he applied his name and the slogan “ Believe It Or Not” as trade-marks. From time to time these cartoons were published in one form or another in newspapers, radio and other media. From 1929, publication of this material was effected throughout the world by syndication under contracts between Ripley and Syndicate Features, Inc., in return for which Ripley received payment of certain royalties. Under these contracts ownership of said trade-marks was stated to be in Ripley.
The trade-marks were registered in the United States Patent Office by Ripley, in his own name, and certificates issued in his name. One was registered in 1925 and two additional ones in 1936. The one first registered in 1925 was renewed in 1945 in Ripley’s name.
In 1930 Ripley organized Believe It Or Not Inc., with a capitalization of 100 shares of stock and, in consideration of the issuance to him of 97 shares of said stock, he agreed to turn over to the corporation all of his right, title and interest in his business ventures conducted theretofore under the name of Believe It Or Not. On June 1, 1930 Ripley informed the board of directors that all properties had been turned into the treasury of the,company and he requested the issuance of stock certificates to him for 80 shares and to one Robert J. Hyland, 20 shares. The corporation thereupon issued the stock accordingly.
*738 From May, 1930 until Ripley’s death in 1949, Ripley and the corporation used the same bank account, although it was in the name of the corporate defendant only. It seems that all income earned by Ripley was deposited in this account. The expenses in connection with the business, as well as Ripley’s personal living expenses, were paid by checks drawn on this account.
The original idea for the formation of the corporation was to try to minimize income taxes, amongst other things. The authorities, however, ruled that all income, and expenses from the business activities were chargeable to Ripley personally and not to the corporation. This was followed by a reconstruction of the corporate books, so that the income from Ripley’s' personal services was credited to him, together with- the expenses in connection therewith. The corporate defendant did-little business and its income and expenses were quite small. -
Upon Ripley’s death a certificate of the issuance of letters testamentary to plaintiffs was recorded in the United States Patent Office.
The records of the United States Patent Office show no transfer by Ripley of any of the trade-marks or their registrations. It is fair to state that, upon his death, the trade-marks were still registered in Ripley’s name. -■ •
On February 16, 1951 plaintiffs sold their 60 shares of stock in the corporate defendant to defendant Storer and Douglas Ripley, a brother of the deceased, as a result of their successful bidding for this stock in proceedings before the Surrogate of Westchester County. There is no doubt that the defendant Storer and Douglas Ripley purchased the stock on the understanding that the plaintiff executors, and not - the corporate defendant, owned the trade-marks. Accordingly, at the samé time that the purchase agreement was executed, a license agreement was entered into, pursuant to which the corporate defendant secured the right to use the trade-marks, in return for the payment of royalties to the plaintiff.
Subsequent thereto, and about a year after the execution of the afore-mentioned license agreement, the defendant Storer claimed that the trade-marks were owned by the corporation and not by the plaintiffs, basing his contention on the minutes of the directors’ meetings held on May 1, and June 1, 1930, from which it appears that the deceased, Ripley, had turned into the treasury of the company all properties, in return for: the allotment of shares to him, as hereinabove indicated. Because of this, the payment of March, 1952, was made under protest. However, thereafter the royalty payments continued to be made *739 without any qualification from March, 1952 until the payments for the periods September 15, 1955 and March 15, 1956 became due, at which time these two payments were stated to-be made under protest.
As a result of the last-mentioned action of the defendant Storer, who purported to act for himself and the corporation, this action has been brought.
A careful review and consideration of all the evidence in this case has convinced this court that the title to the trade-marks was in the deceased, Ripley, at the time of his death.
Section 7 (subd. [b]) and section 33 (subd. [a]) of the Lanham Act (U. S. Code, tit. 15, § 1057, subd. [b]; 1115, subd. [a]) amongst other things, provide that the registration of the mark is prima facie evidence of ownership, but, under this same law, an opposing party is not precluded from proving any legal or adequate defense or defect which might have been asserted if such mark had not been registered.
However, this court does not rest its decision only on the provisions of law above cited. By the whole course of conduct of the deceased Ripley, it is clear to this court that there was never any intention to part with title to the trade-marks. While it is true that he treated the corporation as his own property, he never evinced any desire to transfer title to the trade-marks out of himself. The renewal by him, in his own name, in 1945, of the mark registered in 1925, is clear proof that he had no intention of giving up control of the trade-marks to the corporation.
In addition to the above, the law is clear that the licensee of a trade-mark is estopped to question his licensor’s ownership of that trade-mark. (Ritz Cycle Car Co. v. Driggs-Seabury Ordnance Corp., 237 F. 125; Hicks v. Anchor Packing Co., 16 F. 2d 723.) In Hicks v. Anchor Packing Co. (supra, p. 726) the court said: ‘ ‘ Here again the Anchor Company, being in substance a licensee under certain contracts and in terms a licensee under other contracts with the Hungarian Company, is not in a position to challenge, much less to claim, the title of its licensor ”. Therefore, the corporate defendant and defendant Storer are estopped to question the plaintiffs’ ownership of the trade-marks.
The court will now discuss the claim of the plaintiffs that the defendant corporation has breached the license agreement.
A careful consideration of all the evidence leads the court to the conclusion that the defendant corporation did breach the said agreement in several respects. For one thing, it is crystal clear that the corporate defendant committed a number of acts, *740 as a result of which plaintiffs’ rights in the trade-marks were prejudiced and disparaged. Its action in applying for and obtaining, the registration in Canada, amongst other things, strongly supports this view. This was in violation of subdivision c of paragraph 15 of the license agreement. The court cannot go along with the contention that the individual defendant Storer acted on his own behalf and not as a representative of the defendant corporation. The general rule has been stated as follows:
“ The president or other general officer of a corporation has power, prima, facie, to do any act which the directors could authorize or ratify.” (Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 479.)
“ The president, as managing agent, may, in the absence of restrictions, make such ordinary contracts as custom and the necessities of business would justify or require. * * * The authority of the president, his apparent power to make or ratify the contract in question, may be presumed, but the corporation should be allowed to prove that, by reason of its own course of business or the custom of the trade, authority was in truth lacking.” (Hardin v. Morgan Lithograph Co., 247 N. Y. 332, 338-339.)
In the face of the last-cited language it is significant that no proof was offered by the defendant corporation that the authority exercised by the president, the individual defendant Storer, was in truth lacking. In fact, the defendant corporation defaulted at the trial and offered no evidence whatever.
The refusal by the corporate defendant to make further royalty payments, as evidenced by the letter of June 20, 1956, addressed to plaintiffs, and referred to in the trial as plaintiffs’ “Exhibit 50”, and its failure to make any payments since March 1,1956, except for $500 paid by the receiver, are further breaches of the license agreement. (See license agreement, par. 15, subd. a.)
In addition, the corporate defendant breached subdivision d of paragraph 15 of the license agreement by its failure to carry on its business diligently. As Mr. Justice Coleman stated in his decision in the case of Storer v. Ripley (12 Misc 2d 662) “that because Ripley and Storer were working at cross-purposes it was rather the corporation that was prevented from functioning properly to its disadvantage ”. On the basis of the evidence before this court, it agrees completely with the last-quoted language and holds that the corporate defendant did not carry on its business diligently, as required by the agreement.
*741 This court also believes that the further contention of the plaintiffs to the effect that the license agreement was further breached by the appointment of a receiver for the corporate defendant, not vacated in 60 days, is sound. (License Agreement, par. 15, subd. f.) The fact that this specific breach was not pleaded in the complaint is not fatal. Since no demand was made by the defendants for a bill of particulars specifying the manner in Avhich the license agreement Avas breached, these plaintiffs have the right to prove this particular breach under the general allegations of the complaint, contained in paragraph ‘1 Sixteenth ’ ’ thereof.
The court does not believe it necessary to refer to any other alleged breaches claimed by the plaintiffs, as it is of the opinion that the breaches already listed give the plaintiffs the right to terminate the license agreement.
The court has also considered the defenses urged by the receiver, claiming that the plaintiffs Avaived the breaches and, further, that they were guilty of laches in not commencing proceedings enforcing their rights sooner than they did. As to both these contentions the court finds the receiver has failed to sustain the burden of proof imposed upon him to prove these defenses by a fair preponderance of the credible evidence.
The court is mindful of the contention of the receiver that the retention by the plaintiffs of the $500, paid by the receiver, proves the waiver. In the face of the language of the license agreement, this court does not agree with the receiver.
The defense of the defendant Storer that his activities were in a representative capacity and, therefore, he is not liable individually, is dismissed. The proof shows that he is not only the president of the corporation, but also one who, by his actions, as much as anyone else, has helped to bring about the present situation.
The motion of the plaintiffs, made at the close of the entire case, for judgment against the three defendants, decision of Avhich was reserved, is granted. All other motions made at the close of the plaintiffs’ case, and again at the close of the entire case, decision of which was reserved, are denied.
Findings of fact and conclusion of law having been waived, the above constitutes the decision of this court in accordance Avith section 440 of the Civil Practice Act.
Settle judgment accordingly, Avith costs to the plaintiffs.