DISTILLERIE FLLI RAMAZZOTTI, S. P. A., Plaintiff, *v.* BANFI PRODUCTS CORPORATION, Defendant, and MEDITERRANEAN IMPORTING Co., INC., Impleaded Defendant.

Supreme Court, Trial Term, New York County, October 21, 1966.

*Kaplan & Kaplan* (*Isaac Kaplan* of counsel), for plaintiff. *Bader & Bader* (*I. Walter Bader* of counsel), for defendant and impleaded defendant.

MORRIS E. SPECTOR, J. This is an action in equity for injunction and for damages, both compensatory and punitive. The action arises from a charge of violation by defendant of plaintiff's rights in a trade-mark, and in other acts of unfair competition by defendant with plaintiff.

Plaintiff, a foreign corporation, was incorporated under the laws of the Kingdom of Italy. Plaintiff is the successor in interest to a precedent Italian organization. It is obvious that the operations of plaintiff were those of an Italian family which has been engaged, since 1815, in the compounding, manufacturing and selling of a liquid preparation. That preparation has been sold by plaintiff and its predecessor in Italy, and in many of the countries of Europe and South America. The preparation has become identified, in connection with plaintiff, as "Amaro Felsina Ramazzotti". The preparation, the composition and preparation of which are not claimed to be the subject of letters patent or as proprietary matter, utilizes various herbs and minerals, with alcohol as one of the liquid ingredients in which the other ingredients are dissolved. This preparation was recognized as having medicinal advantages for relief of headaches, indigestion and general debility. The preparation, as sold by plaintiff in Italy and the other countries, had an alcoholic content of 60% by volume. There was no evidence that plaintiff had distributed the preparation in the United States and Canada before defendant came on the scene.

Defendant, a New York corporation, in or about 1922 sought from plaintiff or its predecessor the right to be the sole distributor, in North America and Puerto Rico, of the preparation. At that time, the Volstead Act was in force. Thus, the sale of a product with so high an alcoholic content was unlawful. An agreement was reached between plaintiff and defendant for the production of the preparation in such a manner as to abide by the law, and to be available for sale for medicinal purposes, but still to be sold under the goodwill of plaintiff. For this purpose, the alcoholic content was to be reduced to 39%, and

the concentrate, including the herbs, was to be supplied by plaintiff, and the product was to be sold under the aegis of the name of plaintiff, according to the formula required under the circumstances for proper sale under the then existing law. The product was compounded in Italy by and under the control of plaintiff, and then was shipped from there to defendant in the United States for sale by defendant under the goodwill of plaintiff's name.

In 1926, plaintiff filed an application to register a trade-mark which was then being used by defendant upon the bottles of the preparation being merchandised by defendant in the United States. That application was in the name of plaintiff. Registration No. 236,435 was issued by the United States Patent Office to plaintiff on December 13, 1927. That registration is considered to be of minor significance in the determination here, except for other facts to which reference will be made.

Included in the matter shown in the drawings of that registration is the word '' Amaro ''. Also included in the matter shown in the drawings of that registration are the words '' Felsina Ramazzotti '', and a design which appears to be a coat of arms, and other words. It is made clear that the word '' Amaro '' is Italian, and is admitted to mean '' bitter ''. The registration bears the disclaimer: '' Without relinquishing or forfeiting any of its common-law rights, and solely for the purpose of trade-mark registration in the United States Patent Office, applicant disclaims the right to the exclusive use of the word ' Amaro ', apart from the trade-mark as shown in the drawing ''.

In 1938 when war was imminent in Europe two things took place which are considered to be significant here. First, the parties apparently considered that it was possible that plaintiff might become an alien enemy by reason of the impending war, and that the rights in the registered trade-mark might be taken over by the United States Government. Plaintiff and defendant entered into what was intended to be a trust agreement, not recorded, by which defendant was to become the legal owner of the registration, but only as trustee for plaintiff until the clouds of war had dissipated, at which time the understanding made it clear that the rights in the registration and in the trade-mark were to be those of plaintiff as if the assignment, the agreement, had never existed.

Also, there was considered to be the possibility that the source of supply for defendant of the concentrate, including the herbs, would be cut off if hostilities went to that point. Thus, as the evidence shows, defendant purchased from plaintiff a large

amount, indeed 10 times the amount previously consumed by defendant in any annual period, of the herbs and other ingredients for the compounding of the preparation, so that defendant would be in a position, for the duration of such hostilities, to remain in business. That was in 1938.

Defendant, from 1938 to the end of hostilities, continued to bottle the preparation according to the formula under which plaintiff had theretofore bottled the preparation for defendant. Then, after the war, the relationship between plaintiff and defendant was resumed.

Plaintiff, at the end of the 20-year period, renewed trade-mark registration No. 236,435 for another term of 20 years. This renewal, as the original registration, was in the name of plaintiff. No mention obviously was made of the assignment which had been made back in 1938. Defendant, at that time, or during the entire period until the termination of the relationship between plaintiff and defendant to which reference will be made, never asserted any claim against the registration, or the renewal of the registration, or the rights of plaintiff in that registration and the trade-mark.

The relationship between plaintiff and defendant had continued throughout this time without any form of written agreement, as such, except correspondence. The relationship between plaintiff and defendant obviously had been that in which defendant had been distributor for plaintiff up to the time of the war. After the war, the relationship between the parties was formalized by an agreement, in a letter of ratification from defendant to plaintiff, by which Banfi (defendant) acknowledged its relationship to plaintiff as a licensee. In that letter from defendant to plaintiff, dated October 29, 1946, defendant wrote: '' Banfi firm engages itself to report to Ramazzotti (for all pertinent purposes) any circumstances which might compromise the protection of the patent and trade-mark of Amaro Felsina Ramazzotti and to cooperate for restraining counterfeits, trade-mark, imitations, illegal use of the name, trade frauds or disloyal acts of competition damaging to the product, applying to the Ramazzotti firm for such mandates and powers of attorney needed for taking action ''. There was the further provision: '' The Banfi firm engages itself to assist, in the sense of cooperating with personnel which the Ramazzotti firm might eventually despatch for inspection on the spot its working procedures, or for possible verifications or controls in connection with rights under this contract.''

Defendant thus had established itself in the relationship of a licensee of plaintiff. As to this, defendant has raised questions

as to " supervision and control ", as to the origin of the dress of the package in which the preparation was sold by defendant, and even as to the ownership of the trade-mark. It is considered that the trade-mark of the registration is not an issue in this proceeding, so that little emphasis is placed thereon except for the fact that defendant itself had acknowledged that there was a trade-mark property under which it, defendant, was licensed, and, further, as to the express relationship set up by defendant at the time of the " assignment ", which was before the commencement of World War II, by which defendant had acknowledged the ownership in plaintiff of the trade-mark.

Emphasis is here given to the fact that the goodwill derived from the marketing of plaintiff's product by defendant, as plaintiff's licensee, enured to the benefit of plaintiff, as licensor. Thus, whether or not the dress of the package in which the preparation, the goodwill for the marketing of which under the name of Ramazzotti, was derived from plaintiff, was the creation of plaintiff or defendant, is of no moment. The fact of the matter is that the goodwill in that packaging, for the sale of plaintiff's goods under a license given by plaintiff to defendant, and as sought by and accepted by defendant, enured to the licensor, plaintiff, throughout the period in which the relationship of the parties here continued, from 1922, right through to 1964, when that relationship finally was broken off.

Now defendant, the licensee, seeks to attack the rights of plaintiff under that licensing relationship. But a licensee is estopped from questioning the licensor's ownership of the licensed rights (*New York Trust Co.* v. *Believe It or Not,* 12 Misc 2d 736, 739). It certainly hardly behooves defendant to attack that relationship when, throughout the period, it not only benefited from that relationship, but itself had sought out plaintiff for the commencement of that relationship, in 1922, and for the continuation of the right of defendant to use plaintiff's goodwill throughout the war period, and thereafter, until the time when plaintiff found it necessary to serve notice for termination of that licensing relationship, in 1963. Indeed, defendant, even after the service of that notice of termination, still did not desire termination immediately to ensue, and sought an extension of time for the continuance of the relationship between plaintiff and defendant. Plaintiff then, solely to aid defendant, and for defendant's own economic benefit, extended the license period for one more year, to permit defendant to use up and dispose of defendant's stock on hand, including labels, bottles, and the like, until the end of 1964.

Under such circumstances, it is necessary to repeat, that defendant is hardly in a position now to assert (a) that there never was a license, (b) that defendant owned the trade-mark rights, and (c) that because of failure on the part of plaintiff to "supervise and control", there was a naked license. There apparently was sufficient contact between plaintiff and defendant, by sampling, by purchases by defendant from plaintiff of herbs and other ingredients for the preparation, by accounting, and otherwise, that the obligations of plaintiff as a licensor for supervision and control were discharged, particularly since it is obvious from the agreement of October 29, 1946 that there were sufficient controls set up (*Du Pont de Nemours & Co.* v. *Celanese Corp.*, 167 F. 2d 484, 488–489 [Ct. of Customs and Patent App., 1948]). There is evidence that, in 1960, defendant sent several samples of the preparation to plaintiff for examination as to quality. There is evidence that defendant also had sent advertising material and radio scripts for examination by plaintiff. Also defendant did buy from plaintiff, in 1960, and years prior, quantities of the herbs for the compounding of the preparation which defendant sold under plaintiff's goodwill. No complaints were ever registered with plaintiff as to the quality of the product being sold by defendant, despite the fact that plaintiff's name was conspicuously displayed as a part of the dress of the package. Defendant itself never reported to plaintiff "any circumstance which might compromise the protection of the patent and trademark". A question thus is raised: Should defendant not have reported to plaintiff, during the period from 1946 to the termination date, that it, defendant, claimed rights in the goodwill as against plaintiff, if it is to be heard now to assert any such rights?

Under these circumstances, the dress of the container in which defendant had sold the preparation up to the final sales of the preparation by defendant was, at the time of the termination of the relationship between plaintiff and defendant, not the property of defendant, the licensee, but had become attached to the goodwill of plaintiff, and had become the property of plaintiff, since that dress had become an instrument for the sale of the goods under the licensed goodwill of plaintiff, the licensor.

As a necessary result, if defendant, after the termination of the license relationship between plaintiff and defendant, used the same dress for the container, or a dress which simulated to any degree the precedent dress used by defendant as licensee, that there was likelihood that such simulation would result in passing off or confusion, defendant would be in unfair competition with plaintiff. The fact that plaintiff had not at any time

itself sold the product in the United States appears to be quite without point since there was no naked relationship here (*Wellman* v. *Holzer,* 56 N. Y. S. 2d 299, 301, affd. 271 App. Div. 775; *Frohman* v. *William Morris, Inc.,* 68 Misc. 461, 465).

Additionally, defendant commenced its relationship to plaintiff as the distributor for plaintiff of the preparation manufactured by plaintiff. Then, later, defendant became the licensee of plaintiff, for the use of the goodwill which has been created by the sale of plaintiff's goods in the United States by defendant as distributor for plaintiff's preparation. Certainly the change in relationship from distributor to licensee enured only to the benefit of plaintiff, as licensor, and not to defendant. The goodwill, at the inception, was the goodwill of plaintiff, not of defendant. That goodwill continued to be the goodwill of plaintiff after the licensing relationship was created, and throughout the time that that relationship continued down to its termination.

That plaintiff stood ready, at the termination of the licensing relationship with defendant, to substitute for defendant another licensee more to the liking of plaintiff, is hardly a basis for a claim by defendant against either plaintiff or the counterclaimant defendant. On termination of the licensing relationship, plaintiff had the right itself to enter into the business of selling its product, and of continuing the goodwill under which the original licensing arrangement had proceeded (*Waterproofing Co.* v. *Hydrolithic Cement Co.,* 153 App. Div. 47, 54). And what it could itself do, under these circumstances, it could have done for it by a licensee.

Since the licensing relationship between plaintiff and defendant was properly terminated, plaintiff had a perfect right to institute either a distributorship or a licensing program with the counterclaimant defendant immediately after defendant's right to continue as a licensee terminated.

Plaintiff complains against defendant's sale of defendant's goods, not because of the use of the name "Banfi", but by reason of the dress of the goods, the format of the label, the arrangement of the wording, and the color scheme of the label, as well as the shape of the bottle used. Plaintiff claims, and this is supported by the evidence, that defendant's packaging was substantially identical in dress with the packaging sold by defendant as licensee, and that this will result in misappropriation of the goodwill of plaintiff, as well as misrepresentation of source, so as to cause confusion in the trade. The court had great difficulty in differentiating the two packages, as offered for sale. There appears to be no doubt that continued use by defendant of the dress of its package will result in palming off

of defendant's product as the product of plaintiff, with resultant confusion and deception of the purchasing public.

As to the product put out by defendant, there is no question that the goods are the same, merely being different in alcoholic content, as the goods which plaintiff is now selling through its present licensee. Also, the dress of the package in which defendant had sold the preparation, as licensee, and the dress of the package which defendant sold after termination of the licensing relationship, are so closely identical that likelihood of confusion necessarily would be created. That there are differences in some of the words, that the name, Banfi, has been substituted for the name, Ramazzotti, is not critical when the format, the arrangement of the wording, the coloring, the design, of the packaging in the two cases are so closely identical as to defy anyone to say that there could be sale of the two items, even side by side, without confusion. A purchaser of such goods is not required to carry in his memory, at all times, the exact details of the package so that he will be able, at the time of purchase, to differentiate such two items. In other words, the question is not one of side-by-side sale.

The fact that the respective names appear on the goods of plaintiff's present licensee and of defendant is not sufficient to defeat the right of plaintiff to injunctive relief against the simulation by defendant of all the other features of the labelling used by defendant before the termination of the license. It is the general appearance of the article, as noted by the ordinary purchaser, which is the test (*American Chain Co.* v. *Carr Chain Works*, 141 Misc. 303, 311). Intent to deceive will be presumed where the resemblance is patent and the probability of confusion obvious. Even in the absence of a technical trade-mark, the acts by defendant in dressing its merchandise in a manner which tends to palm off its goods as those of plaintiff, or of its licensee, where the goodwill of plaintiff has become well established in the public mind, both here and throughout the world, the goodwill in the association of the dress of the goods with the goods themselves, become the proper subject for injunction (*Douglass* v. *Newark Cheese Co.*, 153 Misc. 718, 719). As stated in the much cited case of *McLean* v. *Fleming* (96 U. S. 245, 253): '' exact similitude is not required to constitute an infringement or to entitle the complaining party to protection. If the form, marks, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is

such as entitles the injured party to equitable protection, if he takes seasonable measures to assert his rights, and to prevent their continued invasion.''

The position taken by defendant, that its goods are sold through one type of merchandiser, while the goods of plaintiff are sold through another type of merchandiser, can hardly be given weight.

The argument as to the differences between the two preparations likewise is of no moment. The goods being sold by defendant are the same goods which it sold during the time when it stood in what amounts to a fiduciary relationship to plaintiff, both as distributor and as licensee. Since 1959, plaintiff had sought that defendant should change the formula to that of the Amaro Felsina Ramazzotti, which plaintiff used in its international merchandising. But defendant demurred, arguing that the formula defendant was selling had more American appeal. That was one of the reasons why plaintiff terminated the licensing relationship. Defendant may not now claim a right to sell that which it had sold prior to the termination, or the preparation which plaintiff now sells, in packaging the dress of which so closely simulates the dress of the packaging used by defendant during its relationship to plaintiff's goodwill throughout the years, so that defendant would benefit from the goodwill created when defendant was plaintiff's licensee. Indeed, that defendant intended to appropriate plaintiff's goodwill was established not merely by the close simulation of the dress of the packaging, the color scheme of the label, the arrangement of the words, the size of the lettering, the specific location of the word, '' Amaro '', but additionally by the fact that defendant, at the commencement of its operations after termination of the license, advertised itself as '' formerly Ramazzotti ''. Under circumstances such as these, defendant is hardly in a position to urge that it has a right to continue its conduct until it has indeed caused actual confusion. It is not necessary that actual confusion be established. Liability to deception is sufficient to support injunction (*Gotham Silk Hosiery Co.* v. *Reingold,* 223 App. Div. 260, 265). Where the defendant put up his goods so that the packaging is likely to mislead the unwary to purchase the defendant's goods, supposing that they were the plaintiff's, the plaintiff was entitled to injunction, and this was especially so where it should appear that the goods dealt in were purchased by people who are easily deceived (*Reckitt & Sons* v. *Kellogg,* 28 App. Div. 111, 112–113; *Bengue* v. *American Pharmaceutical Co.,* 155 Misc. 602, affd. 250 App. Div. 709).

It is not necessary here to emphasize that the purchaser of such goods is not one who will necessarily pay too close attention to the slight differences in wording of the old packaging, used by defendant in its operations as plaintiff's licensee, and the new packaging, where defendant is selling on its own, so as to create the likelihood of confusion with the sales by plaintiff or its present licensee or distributor. "The public mind attaches to, and is influenced by, general appearances; the public eye is attracted by similarities rather than precise and detailed duplications; the public ear is attuned to phonetics rather than to accurate pronunciation." (Nims, Unfair Competition and Trade-Marks [3d ed.], p. 833.)

Defendant has urged the case of *Sears, Roebuck & Co.* v. *Stiffel Co.* (376 U. S. 225) as having some determinative value in connection with the dress of the package, arguing that because there was no copyright obtained by plaintiff for the label, there is no right in plaintiff to assert a claim for unfair competition against the use by defendant of the dress of its packaging which appropriated the dress of the packaging which was the subject of the operation of defendant as the licensee. It is quite obvious that defendant's consideration of the *Stiffel* case is completely in error. The facts of the *Stiffel* case show that the court was considering the situation as to the protection of designs, under clause 8 of section 8 of article I of the Constitution of the United States. There is no such issue presented here. The question of unfair competition here presented is one which dates back into the ancient common law, and has no relationship to the constitutional provisions upon which the *Stiffel* case was based.

Where defendant had appropriated, as here, the design and format used in labelling of plaintiff's goods during the licensing period, proof of actual deception or misleading of a purchaser is not required (*Good Humor Corp.* v. *Femia,* 6 Misc 2d 758, 759). It appears quite obvious that defendant here sought to capitalize upon the prestige, reputation and goodwill established while defendant had functioned as plaintiff's licensee, with the benefit of the Ramazzotti name.

There is nothing here to prevent defendant from selling either plaintiff's formula or the formula sold by defendant as licensee of plaintiff, so long as defendant does not use a package for this purpose where the dress of the package, which includes the arrangement of the printed matter on the label, is such as to result in simulation such as has been presented here. Even the positioning of the word "Amaro", and other details, in the dress of defendant's packaging, are so closely identical with

that of the old packaging as to defy recognition on the part of the ordinary purchaser of any differences.

It is noted that Registration No. 236,435, discussed here, was obtained by plaintiff under the Trade Mark Act of 1905 (33 U. S. Stat. 724). It was renewed under the Trade Mark Act of 1946, commonly referred to as the Lanham Act (60 U. S. Stat. 568; U. S. Code, tit. 15, § 1051 *et seq.*). It has become well settled that while descriptive words had not been registrable under the Act of 1905, still, under the Act of 1946, it was possible to register, even on the Principal Register, words which were otherwise descriptive, but which had become distinctive of the registrant when used upon the registrant's goods (U. S. Code, tit. 15, § 1052, subd. [f]). The court here is not considering the question as to whether plaintiff has an exclusive right to the word "Amaro", by reason of these provisions of the Lanham Act, that is, whether plaintiff acquired, by its renewal, rights which it had disclaimed under the Act of 1905, since such considerations are not necessary for the determination here made. This court does not find that it is necessary to take any action in connection with that registration in the United States Patent Office, except to hold that defendant, during its relationship with plaintiff, was either a distributor or a licensee, and, as such, acquired no right to ownership in the goodwill of the dress of the package, including any wording thereon, which defendant had sold as licensee of plaintiff. This court does have the jurisdiction necessary to enjoin the unfair competition inherent in the conduct of defendant here set forth. What defendant will do in the future, if it sees fit to apply the word "Amaro" in the dress of its packaging, is for defendant to determine. Certainly defendant may not trespass upon the goodwill resident in the dress of the packaging upon which defendant did trespass after the termination of the relationship between plaintiff and defendant, from which it must be enjoined, in the considered opinion of this court.

No competent evidence has been presented to support the third-party complaint. Therefore, the third-party complaint against the third-party defendant is dismissed. There was not a scintilla of evidence, that the third-party defendant, or any of its officers, induced a breach by plaintiff of the agreement between defendant and plaintiff. That agreement permitted plaintiff or defendant, at its own discretion, to move to terminate the agreement by notice by registered mail by October 30 of any year. Plaintiff complied with that requirement.

Secondly, plaintiff, since 1959, has been urging defendant to import the Ramazzotti formula, with the alcoholic content determined by plaintiff for its international sales, so that the product sold under plaintiff's goodwill throughout the world, and in the United States, would be uniform. Defendant refused to acquiesce. When plaintiff found an importer who would comply with plaintiff's requirements for merchandising in the United States, plaintiff terminated its relationship with defendant. That required defendant to terminate any further connection of any kind with the goodwill of plaintiff, and deprived defendant of any right to continue merchandising under the cloak of any of plaintiff's goodwill.

Judgment should be rendered for plaintiff, and the temporary injunction should now be made permanent. Defendant's counterclaims against plaintiff and the third-party defendant are dismissed. The bond posted by plaintiff shall be cancelled.

An accounting is hereby ordered before Hon. SEYMOUR BIEBER, Special Referee, to hear and report on the issue of the compensatory damages suffered by plaintiff by reason of defendant's sale of the simulated products herein enjoined, together with his recommendations thereon. Pending receipt of said report, the issue of punitive damages is held in abeyance.