233 F.Supp. 102 (1964)
KINGSWAY, INC., Plaintiff,
v.
Ray WERNER and Missouri Plastics, Defendants.
No. 61 C 83(1).
United States District Court E. D. Missouri, E. D.
June 12, 1964.
E. E. Ezell, Kingsland, Rogers & Ezell, St. Louis, Mo., for plaintiff.
Ralph W. Kalish, St. Louis, Mo., for defendants.
HARPER, Chief Judge.
This is a suit brought by Kingsway, Inc. (hereinafter referred to as plaintiff) against Ray Werner and Missouri Plastics (hereinafter referred to as defendants), for infringement of plaintiff's alleged trademarks "Kingsway Florentine" and "Florentine" which have been applied to chess sets, and for unfair competition based upon defendants' manufacture and sale of chessmen allegedly copied and simulating the chessmen sold by plaintiff. Defendants have counterclaimed against plaintiff for unfair competition. Jurisdiction is based upon diversity of citizenship. *103 The matter in controversy exceeds the sum of $10,000.00.
The uncontroverted facts are as follows: Plaintiff is a rather small, one-man corporation, organized in 1947, which manufactures and sells plastic chess sets, plastic card holders and some other items. The first and main item manufactured and sold by plaintiff is its "Florentine" figurine chess sets.
Plaintiff first started selling plastic chessmen in 1947. On the front bottom of the pedestal of the King and Queen is molded "Kingsway, Inc." and on the back thereof "Kingsway Florentine trademark" (Plaintiff's Exhibit 5). In 1959, plaintiff started selling its chess sets under the name "Florentine" chess sets (Plaintiff's Exhibit 7). A figurine chess set is one in which each piece is a full figure (e. g., a King or Queen), while a Staunton chess set comprises pieces which are symbols (e. g., a crown with a cross on it is a King).
There are many different figurine chess sets (handcarved from the Orient, Europe, etc.) on the market. However, plaintiff was the first manufacturer of inexpensive plastic figurine chessmen. Between the years 1947 and 1962, plaintiff sold one and one-half million dollars worth of "Florentine" or Kingsway Florentine" chess sets.
There are several legal and factual issues in this case which must be considered by the court. First, the court must decide whether the defendant has infringed any trademark rights owned by plaintiff. Plaintiff alleges that it is the owner of the trademarks "Kingsway Florentine" and "Florentine" applied to chess sets. Second, the court must determine whether defendant is liable for unfair competition for making and selling figurine chessmen which are very similar to plaintiff's chessmen. Third, the court must determine whether defendants' counterclaim has merit.
The first two issues require the court to consider traditional fair and unfair methods of competing for business. Generally speaking, the use of trademarks and product designs as methods of competing for business have hinged on the ability of these devices to identify the source of the product to which they refer. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Elgin Nat'l Watch Co. v. Illinois Watch Case Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365; Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299; G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369. A central issue in cases of this kind is whether the trade device (trademark or product design) indicates or is capable of indicating the source of the product.
Defendants have manufactured and sold figurine chessmen which are very similar to plaintiff's chessmen; however, defendants are not liable for alleged unfair competition.
Two very recent United States Supreme Court opinions make it very clear that a design, not protected by a design patent or other federal statutory protection, can be copied in every detail by whoever pleases. Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669; Sears, Roebuck & Co., v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661. This is true even if we assume, arguendo, that the plaintiff's chessmen, because of their design, had acquired a "secondary meaning" prior to defendants' copying.
In Compco Corp. v. Day-Brite Lighting, Inc., supra, the plaintiff and defendant were manufacturers of fluorescent lighting fixtures of a kind widely used in offices and stores. In 1955, Day-Brite started selling a fluorescent light reflector having cross-ribs which the District Court found had the capacity to identify Day-Brite in the trade and did in fact so identify it to the trade. The Compco Corporation copied Day-Brite's distinctive design so that to the ordinary observer the defendant's and plaintiff's reflectors were the same in appearance.
The Supreme Court accepted these findings (i. e., that there was confusion as to source of the articles), but held that *104 state law may not forbid Compco from copying the Day-Brite article. The court did hold, however, that state law could require copiers to take precautions to identify their products as their own.
At page 238 of 376, at page 782 of 84 S.Ct. in the Compco case, supra, the Supreme Court stated:
"A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original. That an article copied from an unpatented article could be made in some other way, that the design is `nonfunctional' and not essential to the use of either article, that the configuration of the article copied may have a `secondary meaning' which identifies the maker to the trade, or that there may be `confusion' among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying and selling, regardless of the copier's motives. Cf. Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 120, 59 S.Ct. 109, 114, 83 L.Ed. 73 (1938)." (Emphasis added.)
It should be carefully noted that in the case at bar, the plaintiff put on no evidence of defendants' attempt to palm off their chessmen as those made by plaintiff, nor is the court convinced that palming off is inevitable. Defendants sold their own chess sets in packages that are clearly marked with defendants' name.
Prior to the two recent United States Supreme Court opinions, discussed supra, one might freely imitate an unpatented article in all its functional elements, so long as this right to copy was not exercised in such a way as to confuse the public as to the origin of the goods. A person could legally copy a nonfunctional part of an article unless the originator proved two things: First, that a certain feature of the originator's product had acquired "secondary meaning", thereupon identifying the source of the product to prospective buyers; second, that buyers are likely to confuse the imitation with the original. This doctrine was established in the now famous case of Crescent Tool Co. v. Kilborn & Bishop Co., supra, and has been followed in subsequent cases. See Kellogg Co. v. Nat'l Biscuit Co., supra; Upjohn Co. v. Wm. S. Merrell Chemical Co., 6 Cir., 269 F. 209. For an interesting study of these cases and other matters concerning "secondary meaning", see "Competition, The Right to Copy and Secondary Meaning," 1963 Washington University Law Quarterly, page 224, April issue.
Under the doctrine laid down in the Crescent Tool case, the court is of the opinion that the defendants are not liable for unfair competition. Although the court does not feel it necessary to decide whether defendants have copied functional or nonfunctional features of plaintiff's chessmen, the court is of the opinion that the plaintiff has not shown that its chessmen have acquired "secondary meaning". The evidence does not indicate that purchasers have been moved to buy plaintiff's chessmen because of the source. In summary, defendants are not liable for unfair competition under either the Crescent Tool doctrine or the doctrine laid down in the two recent United States Supreme Court opinions.
In regard to the alleged infringement of plaintiff's "Florentine" and "Kingsway Florentine" trademarks, both parties agree that the primary function of a trademark is to indicate that the goods upon which it is placed emanate from a common source. See Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629; Restatement, Torts, 715 (1938).
It is also clear that a trademark is a definite property right, which the courts protect as they protect other property *105 rights. "Trade-Mark Cases", 100 U.S. 82, 25 L.Ed. 550; Hanover Star Milling Co. v. Metcalf, supra.
Plaintiff is correct in its contention that as a matter of law the likelihood of or probable confusion is sufficient to sustain trademark infringement. Cook Chemical Co. v. Cook Paint & Varnish Co., 8 Cir., 185 F.2d 365. It must be remembered, however, that plaintiff must first prove that its use of "Florentine" has indicated plaintiff (Kingsway), or a common source, as the origin of a chess set bearing the alleged trademark "Florentine". In other words, plaintiff must prove that "Florentine" has acquired a "secondary meaning", indicating plaintiff as the source or at least a common source. The primary significance of "Florentine" in the minds of the public must be the plaintiff (or common source) and not the product (i. e., chessmen). Kellogg Co. v. Nat'l Biscuit Co., supra, 315 U.S. l.c. 118, 59 S.Ct. 109.
The court is of the opinion that "Florentine" does not nor has it acquired "secondary meaning" as required by the law of trademarks and unfair competition. Evidence indicates that "Florentine" has been presented to the public in such a manner as to indicate that "Florentine" is a style or type of chess set. For example, see Defendants' Exhibit D, p. 193; Defendants' Exhibit R; Defendants' Exhibit E-2; Plaintiff's Exhibit 4; Plaintiff's Exhibit 17-9; Plaintiff's Exhibit 17-H. Certainly, there is not sufficient evidence to show that "Florentine" chessmen mean chessmen originating from a common source. The court, therefore, holds that plaintiff does not have any trademark right in the term "Florentine".
As to defendants' counterclaim, the court holds that defendants' claim is without merit.
The court adopts the above as its findings of fact and conclusions of law. Attorneys for the defendants will prepare the proper order and submit to the court for entry.