**PEZON ET MICHEL, Plaintiff,**

v.

**ERNEST R. HEWIN ASSOCIATES, INC., Defendant.**

No. 67 Civ. 1072.

United States District Court
S. D. New York.

June 7, 1967.

Burns, Lobato & Zelnick, New York City, for plaintiff, Allan Zelnick, New York City, of counsel.

Jesse K. Robinson, New York City, for defendant, Darby & Darby, Donald J. Overocker, William F. Dudine, Jr., New York City, of counsel.

## OPINION

BRYAN, District Judge:

In this action for trademark infringement and unfair competition plaintiff moves for preliminary injunctive relief. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332, and the Lanham Act, 15 U.S.C. §§ 1121, 1114(1), 1125(a), 1126(h); 28 U.S.C. § 1338.

Pezon et Michel (Pezon) is a French corporation doing business in France which sells fishing tackle and equipment throughout the world. Defendant Ernest R. Hewin Associates, Inc. (Hewin) is a New York corporation doing business in this district which imports and distributes fishing tackle and equipment.

Since about 1935 Pezon has exported to the United States various sizes and types of spinning reels under the trademark LuXor. These reels were mechanically designed, allegedly at the instance of Pezon, by Paul Mauborgne, a well known French industrial designer now deceased, whose interests are presently represented by P. Mauborgne & Co.,

a French partnership. P. Mauborgne & Co. (or Mauborgne's Estate) presently holds fifteen unexpired United States mechanical patents and also a number of French patents on spinning reels.

Pursuant to long standing arrangements between Mauborgne and Pezon the reels were manufactured in France under Mauborgne's supervision by Lemaignen Leche Vallier Mercierf (Lemaignen). The reels so manufactured, exported to the United States by Pezon and sold by its distributors here, had cast in raised letters on the housing the word "LuXor", the name "Pezon et Michel" and the legends "Licence P. Mauborgne" and "Made in France—Brevete & G. D. G." The trademark "LuXor" for "fishing-tackle (excluding fishnets,)" was registered in the United States Patent Office by Pezon on March 8, 1966.

The present controversy between the parties stems from a dispute in France between P. Mauborgne & Co. and Pezon concerning rights to license, manufacture and distribute the reels which were being sold by Pezon under the LuXor trademark. After the death of Paul Mauborgne in 1963 the relations between Pezon and P. Mauborgne & Co., controlled by his widow, deteriorated. On August 10, 1966 Mauborgne & Co. terminated its arrangements with Pezon, refused to sell them any more of the reels manufactured under the Mauborgne patents by Lemaignen, and forbad any further sales. On September 19, 1966 Mauborgne and Lemaignen entered into an agreement with Hewin for the exclusive distributorship of Mauborgne reels in the United States under Mauborgne trademark CrAck. Hewin has been selling these reels in the United States for some months under the CrAck trademark pursuant to this agreement. The parties concede that the CrAck reels are identical in all respects with the reels sold by Pezon under the LuXor trademark except that the trademark "CrAck" and the legends "Licence P. Mauborgne," "Bernouville-Eure" and "Made in France—Brevete & G. D. G." are cast in the housing in raised letters.

Mauborgne and Pezon have brought suit against each other in the French courts to determine their rights with respect to the manufacture and sale of the reels involved in this action and to the tools and dies used in their manufacture. The French litigation is pending and undetermined though it appears that an application by Pezon for preliminary relief was denied on April 8, 1967. Hewin is not a party to the French litigation.

The issues in the case at bar are much narrower than those in France. For purposes of this action Pezon concedes that Hewin has the right to sell the reels designed by Mauborgne under the mark CrAck which are identical with the reels Pezon sells under the tradename LuXor. Pezon's suit here is directed solely at alleged infringement of its LuXor trademark by Hewin and alleged unfair competition in Hewin's sale of the CrAck reel.

Pezon contends that by his methods of sale, advertising and promotion, Hewin is attempting to palm off the CrAck reel as the LuXor reel; is creating confusion in the minds of the purchasing public as to source; is falsely creating the impression that the LuXor reel is no longer imported or available; and is trading on and appropriating the goodwill of Pezon and the LuXor trademark. Pezon claims that as a result of such conduct its United States distributor has stopped handling

LuXor reels and that its American market is being destroyed.

Hewin, on the other hand, insists that everything which it has done in the sale and promotion of its CrAck reels is lawful, legitimate and entirely proper in the light of the termination of the prior arrangements between Mauborgne and Pezon and its distributorship agreement with Mauborgne and Lemaignen. It contends, moreover, that Pezon no longer has any right to distribute the Mauborgne reels in the United States and that any attempt to do so under the mark LuXor would be in violation of Mauborgne's rights generally and an infringement of Mauborgne's valid United States patents.

Nevertheless, Hewin by letter to the court dated April 14, 1967, has represented that it "agrees not to use the mark LUXOR on its reels, reel parts or packaging. Likewise defendant agrees not to represent to the trade that it owns the LUXOR mark or that Hewin or CRACK reels are in any way related to Pezon et Michel. Defendant further agrees not to represent to the trade that Pezon et Michel is no longer in business, or that Pezon et Michel no longer sells LUXOR reels."

**I.**

Despite trademark infringement overtones, Pezon's claim here is essentially one of unfair competition.[1] The reels

---

[1]. Jurisdiction here is based both on 28 U.S.C. § 1338 (a claim of unfair competition joined with a substantial and related claim under the trademark laws) and on diversity under 28 U.S.C. § 1332. Despite early disagreement, compare Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 540 n. 1 (2d Cir. 1956), with id. at 545 (Clark, C. J., concurring), the present rule in this circuit is that where a claim for unfair competition is joined with a trademark claim, the state law of unfair competition should be applied, at least where there is also diversity jurisdiction. Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 780–781 (2d Cir. 1964); American-Marietta Co. v. Krigsman, 275 F.2d 287 (2d Cir. 1960); 1A Moore, Federal Practice ¶ 0.326 and p. 3770 nn. 2, 12 (2d ed. 1965 & Supp.1966). Commentators

have suggested that in cases such as the one at bar, where the unfair competition has multi-state ramifications, federal law should be applied. See 1A Moore, Federal Practice 3772–73 (2d ed. 1965).

But as Judge Kaufman pointed out in Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 619 n. 9 (2d Cir. 1962), while this question is complex, New York and federal law are not essentially different. The result reached here is in no way dependent upon a choice of federal or state law. As in Hygienic Specialties, supra, and Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961), the "indeterminate general law" is sufficient for purposes of determining this motion. See American Safety Table Co. v. Schreiber, 269 F.2d 255, 270–271 & n. 4 (2d Cir. 1959).

sold by Pezon and Hewin are identical both mechanically and in appearance except for the marks LuXor and CrAck. Pezon claims no monopoly in the sale of these reels by way of patent protection or otherwise. From the standpoint of Pezon these reels, for purposes of this motion at least, must be considered to be in the public domain and a free competitive market in them is to be encouraged in the public interest.

 As Pezon recognizes, manufacture and sale of an exact copy of an unpatented design by a new entrant into the market does not in itself constitute unfair competition. E. g., Feathercombs, Inc. v. Solo Prods. Corp., 306 F.2d 251, 257 (2d Cir. 1962); G. Ricordi & Co. v. Haendler, 194 F.2d 914 (2d Cir. 1952). Nor does plaintiff claim here that the LuXor mark has acquired a secondary meaning as to the mechanism or its source. Compare Mastercrafters Clock & Radio Co. v. Vacheron & Constantin-Le Coultre Watches, 221 F.2d 464 (2d Cir. 1955); Triangle Publications v. Rohrlich, 167 F.2d 969 (2d Cir. 1948). In order to establish unfair competition absent a claim of secondary meaning, Pezon must show that Hewin is palming off the reels he sells as those of Pezon; or that Hewin's practices have actually created confusion among purchasers as to the source of the reels which he sells; or that Hewin has misappropriated Pezon's property or goodwill. Flexitized, Inc. v. National Flexitized Corp., 335 F. 2d 774 (2d Cir. 1964); Blisscraft of Hollywood v. United Plastics Co., 294 F. 2d 694 (2d Cir. 1961); Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959).

 Palming off is an attempt to make the purchaser believe that the product of the subsequent entrant is that of his better known competitor. See Enders Razor Co. v. Christy Co., 85 F.2d 195 (6th Cir. 1936); Bristol-Myers Co. v. R. H. Macy & Co., 151 F.Supp. 513 (S.D.N.Y.1957). The line between palming off and creating confusion as to source is indistinct; in effect, palming off is simply a direct and more flagrant means of misleading purchasers as to the source of the product. Both palming off and creating confusion as to source can easily lap over into misappropriation of the property or goodwill of a competitor.

 A product in the public domain may be manufactured and sold by anyone. But one who seeks to market a product similar to that marketed by another, is required to merchandise his product in such a way as to differentiate it in the mind of the average purchaser from the product of his competitor. Feathercombs, Inc. v. Solo Prods. Corp., 306 F.2d 251 (2d Cir. 1962); Midwest Plastics Corp. v. Protective Closures Co., 285 F.2d 747 (10th Cir. 1960); Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc., 281 F.2d 755 (2d Cir. 1960); Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959). While the promotion of competition in products in the public domain is favored, the competitive advantages obtained by the earlier entrant into the field in terms of the goodwill associated with his name and reputation are entitled to protection. For though the goodwill of an unpatented product or device is in the public domain, Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938); Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962), the goodwill, name and reputation of the producer remain his private property and may not be traded upon or exploited by his competitors. See, e. g., Flexitized, Inc. v. National Flexitized Corp., 335 F. 2d 774, 781 (2d Cir. 1964). The facts in each case must be carefully examined to determine whether they come within these well settled principles.

## II.

Before discussing the contentions of the parties in the light of the applicable law some preliminary observations are in order.

It is impossible from the papers before me to determine the terms of the arrangements between Pezon and Mau-

borgne prior to cancellation on August 16, 1966. There was apparently no written contract between the parties and such understanding as there was was largely oral. Pezon and Mauborgne each claims, in essence, that the other was its distributor and licensee. Each claims the right to manufacture and sell the Mauborgne reels to the exclusion of the other. Pezon claims the tools and dies now held by Mauborgne and Lemaignen and the latter claim they are the sole owners of them. Pezon apparently does not question the Mauborgne patents, in this action at least, but seems to claim rights by way of license which Mauborgne strenuously denies.

All of these issues appear to be the subject of and dependent on the litigation in the French courts which will not be speedily resolved. Hewin is not a party to that litigation and Mauborgne and Lemaignen are not parties to this. Thus, the respective rights to the identical reels sold by Pezon under the trademark LuXor and by Hewin under the trademark CrAck cannot be determined at the present stage of this action and in all probability must await resolution by the French courts.

■ It is all very well for Pezon to say, as it does here, that this case involves only the LuXor trademark and that everything else is irrelevant and immaterial. Plainly, however, the claims of trademark infringement and unfair competition cannot be determined in a vacuum. The facts, circumstances and background in which the conduct complained of occurred bear directly on the question of whether there was essential unfairness.

Here the background facts and circumstances are in sharp dispute and, indeed, are the subject of pending litigation in another country. Thus, the manner in which these identical reels can be marketed in this country under the competing trademarks depends to a major degree on the questions now being litigated in France and, indeed, the effect of the unexpired Mauborgne patents which are not here challenged.

### III.

With these considerations in mind I turn to the specific complaints which Pezon makes as to Hewin's conduct. They may be grouped generally into three categories:

(a) Alleged similarity of the CrAck mark to the LuXor mark and placing of the legend "Licence P. Mauborgne" on the CrAck reel;

(b) Brochures, model and parts designations and other promotional material;

(c) Alleged false and misleading references to LuXor reels and Pezon's sale of them in Hewin advertising.

#### a.

■ Plaintiff does not claim here that Hewin has attempted to sell any reels with the LuXor mark on them. All of Hewin's reels bear the mark "CrAck" meaning "champion" in French. I see no merit in Pezon's claim that the mark "CrAck" is confusingly similar to the mark "LuXor" because the middle letter of both words is capitalized. As Hewin points out, it is not at all unusual to capitalize the middle letter of a trademark and I fail to see any possibility of confusion which could arise from doing so here.

■ Nor is there merit in the contention that the placing of the legend "Licence P. Mauborgne" on the CrAck reels is confusing and improper. It is true that the same legend appears on the LuXor reel though the words "Bernouville-Eure" on the CrAck reel are not used on the LuXor. But it is plain that both reels were designed by Mauborgne and manufactured by Lemaignen under Mauborgne's supervision. Hewin is Mauborgne's distributor. Pezon does not question Hewin's right to sell the Mauborgne reel, at least for purposes of this motion. If Hewin has the right to distribute these reels, it and Mauborgne are plainly entitled to take advantage of whatever meaning the name Mauborgne has to purchasers. Cf. Amiesite Asphalt Co. of America v. Interstate Amiesite Co., 72 F.2d 946 (3d Cir. 1934).

### b.

Pezon has submitted for purposes of comparison the brochure put out by Hewin showing its 300 CrAck reel and the brochure used by Pezon for its LuXor Saumon-Mer No. 3 reel. Pezon claims that the Hewin brochure is copied from the Pezon brochure, is false and misleading, creates confusion in the mind of the public as to the source of the CrAck reel, and constitutes an appropriation of Pezon's goodwill and property rights in the LuXor mark.

The Hewin brochure is quite different in cover design, color, size, shape and layout from the Pezon brochure. It makes no mention whatsoever of the name LuXor. While the reel shown is identical to the LuXor reel of the same model, the picture used is different and the reel depicted has the CrAck mark on it.

It is true that the diagram of the reel as disassembled is somewhat similar to the comparable diagram in the Pezon brochure though it is differently laid out and uses a different system for numbering the parts and sub-assemblies. But it is difficult to see how similarities can be avoided when dealing with an identical mechanism. See Feathercombs, Inc. v. Solo Prods. Corp., 306 F.2d 251, 258 (2d Cir. 1962).

The technical instructions, however, though differently laid out, are identical to those in the Pezon brochure. But this material makes no reference to the LuXor reel. Unless a word by word comparison of one brochure with the other is made, no impression is given that this material would apply to any other reel but the CrAck. Finally, the packaging of the CrAck reel is entirely different from that of the LuXor reel and one could not possibly be confused for the other.

I do not find that the Hewin brochure is false or misleading or creates any confusion as to source. See Swanson Mfg. Co. v. Feinberg-Henry Mfg. Co., 147 F.2d 500 (2d Cir. 1945).

Pezon also complains that Hewin has used the terms "Contact" "Relax" "Mer" "Feather" and "Seven Seas" to designate various models of its CrAck reels. The terms "Contact" and "Relax" are marks registered to Mauborgne in the United States. Hewin claims that the other terms are registered to Mauborgne in France and that Mauborgne has the right to use them all. Pezon disputes this and claims a right to the terms by prior use. It is impossible to determine on the papers before me who has the right to use these model designations and it may well be that such questions must await the determination of the French litigation between Mauborgne and Pezon. In any event, Pezon has failed to establish here that the use by Hewin of these model designations is improper.

Hewin concedes that at the outset of its sales activities here it used a retouched picture of a LuXor reel, which had appeared in a Pezon catalogue, in a pamphlet describing the CrAck reel. Hewin points out, however, that the LuXor mark was completely excised from the reel in the picture and the CrAck mark placed in its stead. Hewin has discontinued the use of this photograph and now uses exclusively a photograph of the CrAck reel.

While the use of a photograph of a competitor's product to advertise one's own product may amount to unfair competition, see Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608 (S.D.N.Y.1961); Mastro Plastics Corp. v. Emenee Indus., 14 N.Y.2d 498, 248 N.Y.S.2d 223, 197 N.E.2d 620 (1964), that is not so here. The photograph was used only briefly. The two reels are completely identical except for the marks. The photograph used with the CrAck mark substituted for the LuXor mark could have had no secondary significance. While this photograph should not have been used its use in the circumstances cannot be said to have had any adverse effect on Pezon's rights.

### c.

Pezon claims that Hewin has made statements in advertising, press releases and letters to its customers which create the impression that in fact "CrAck reels *are* LuXor reels"; that LuXor reels are no longer being imported into the United States; and that Pezon is no longer entitled to sell LuXor reels. As examples, Pezon points to statements that CrAck reels have been substituted for LuXor reels; that "CrAck reels were formerly known and imported under the name of LuXor"; that "P. Mauborgne has registered the identical reels formerly known under the name of LuXor, under their own name CrAck"; that the CrAck reel is "identically the same as the former LuXor"; that "the importation of LuXor reels into the United States is discontinued"; that the CrAck reels are "world famous French spinning reels formerly known as LuXor", and that "CrAck reels are identical models of those manufactured and imported previously, and all spare parts of the CrAck and LuXor reels are totally interchangeable."

The statements that CrAck reels are identical with LuXor reels except for the mark is of course entirely true. Such statements relate to the goodwill of the product itself which is in the public domain and in which Hewin has a right to share. They do not constitute an attempt to trade on the LuXor mark or any goodwill inherent in the mark itself. See Hygienic Specialties Co. v. H. G. Salzman, Inc., supra, 302 F.2d at 622; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 122, 59 S.Ct. 109, 83 L.Ed. 73 (1938). These statements by themselves do not amount to unfair competition.

The same can be said about the statements that the parts of the CrAck reels and the LuXor reels are interchangeable. See American-Marietta Co. v. Krigsman, 275 F.2d 287 (2d Cir. 1960); Electric Auto-Lite Co. v. P. & D. Mfg. Co., 78 F.2d 700 (2d Cir. 1935).

But this does not resolve the questions raised here. For if language is used which creates the false impression that Hewin is taking over the business of Pezon in LuXor reels and that the CrAck reel is wholly supplanting the LuXor reel in the market, this may tend to create confusion as to source or even amount to an attempted appropriation of Pezon's property rights. There appear to be such elements present in the use of such phrases as *"formerly* known as the LuXor reels;" and *"formerly* known and imported under the name LuXor"; that LuXor reels were imported *previously* and that the importation of LuXor reels "is discontinued."

Were it not for the background of the dispute in France between Pezon and Mauborgne and the pending French litigation, I would be inclined to the view that repeated use of such statements might constitute unfair competition. But when the sharp dispute as to the facts and circumstances underlying the controversy and litigation in France is taken into account, a different picture is presented. Against this background, it cannot be said with any assurance that Pezon has the right to import and market these identical Mauborgne reels in the United States. Both the prior and present relationships between Pezon and Mauborgne and the legal consequences flowing therefrom are entirely up in the air. It is impossible to forecast how the litigation between them will be resolved.

The situation is further complicated by the Mauborgne United States and French patents, the reach and effect of which remain completely unclarified. Pezon may be entitled to have someone manufacture under the LuXor mark a reel identical to the Mauborgne reel. On the other hand, Pezon may only be entitled to produce a reel similar in appearance though mechanically different from the Mauborgne reel. These questions are wholly incapable of resolution on this record. Whatever their resolution, plaintiff has not shown a present capacity to make or market a new reel under the LuXor mark.

It is not without significance in this connection that in its letter of April 14, 1967, Hewin agreed that it would not

represent to the trade that Hewin or CrAck reels are in any way related to Pezon, that Pezon is no longer in business, or that Pezon no longer sells LuXor reels.

In the few cases enjoining the sale of a product in the public domain as unfair competition, absent a showing of secondary meaning, there was either a prior contractual relationship between the two parties, see Flexitized, Inc. v. National Flexitized Corp., supra; or a showing of actual deception at the consumer level, see Harold F. Ritchie, Inc. v. Chesebrough-Ponds, Inc., 281 F.2d 755 (2d Cir. 1960); compare American-Marietta Co. v. Krigsman, 168 F.Supp. 645 (E.D.N.Y.1958), modified 170 F.Supp. 770 (E.D.N.Y.1959), aff'd, 275 F.2d 287 (2d Cir. 1960); or a substantial claim of trademark dilution or infringement, see Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2d Cir. 1961). None of these factors are present here. There was no prior contractual relationship of any kind between Hewin and Pezon and there has been nothing to show any actual deception of prospective purchasers. All that has been done is to exploit the implications of the unresolved controversy in France between Mauborgne and Pezon. If any confusion has been created in the minds of the purchasing public it is no greater than the confusion in the mind of the court after a careful study of this record. Finally, there has been no disparagement or running down of the LuXor product or the LuXor mark by Hewin. All of its references to LuXor reels have, in fact, been favorable and they have frequently been referred to as the "famous LuXor reels." Compare Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607 (2d Cir. 1960); Electrolux Corp. v. Val-Worth, Inc., 6 N.Y.2d 556, 190 N.Y.S.2d 977, 161 N.E.2d 197 (1959).

■ I conclude that Pezon has not shown such a reasonable probability of success on the merits as is required for the issuance of the broad injunctive relief which it seeks. Societe Comptoir De L'Industrie, etc. v. Alexander's Dept. Stores, Inc., 299 F.2d 33, 34, 1 A.L.R.3d 752 (2d Cir. 1962); United Gas Corp. v. Pennzoil Co., 248 F.Supp. 449, 459 (S.D.N.Y.1965).

IV.

■ The likelihood of irreparable injury, also a sine qua non for the granting of such relief, is intertwined with the complicated unresolved problems in France and has not been sufficiently shown here.

Pezon's claimed loss of its United States distributor can just as readily be attributed to the uncertainties of the French situation as to Hewin's conduct. The inability to obtain new stocks of reels and parts is a result of Mauborgne's refusal to deal. Whatever rights Pezon might have to sell its present stock of LuXor reels, or to obtain and sell a different reel under the LuXor tradename, can be adequately protected without resort to the extensive injunctive relief requested.

Moreover, Hewin has shown that it would suffer substantial harm if an injunction against sale of CrAck reels were granted. Plaintiff has not demonstrated that Hewin is not entitled to sell CrAck reels as they are presently manufactured and designed. On the record before me, the equities balance in defendant's favor. See Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742–743 (2d Cir. 1953); United Gas Corp. v. Pennzoil Co., supra, 248 F.Supp. at 459.

■ One of the functions of a temporary injunction, however, is to preserve the status quo pending determination of the litigation. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir. 1953); Doeskin Prods. v. United Paper Co., 195 F.2d 356, 358 (7th Cir. 1952); Ideal Toy Corp. v. Sayco Doll Corp., 302 F.2d 623, 628 (2d Cir. 1962) (dissenting opinion of Clark, C. J.); 7 Moore, Federal Practice ¶ 65.04 (2d ed. 1966). In view of the highly unusual facts in this case it appears that Hewin should be required to

abide by the agreement contained in its letter of April 14, 1967 to which reference has already been made and it is directed to do so. I see no reason to require any security from Pezon as a condition for imposing such a requirement.

Except to the very limited extent just indicated, the motion for a preliminary injunction is in all respects denied.

The foregoing constitutes my findings of fact and conclusions of law on this application pursuant to Rule 52, F.R.Civ.P.

It is so ordered.