**REMCO INDUSTRIES, INC., Plaintiff,**

v.

**TOYOMENKA, INC. and Bert Gorman, Inc., d/b/a Bert Gorman & Associates, Defendants.**

**No. 68 Civ. 1157.**

United States District Court
S. D. New York.
April 26, 1968.

40. Plaintiff's Reply Memorandum, p. 4.

Alvin D. Lurie, New York City, for plaintiff; Robertson, Bryan, Parmelee & Johnson, Stamford, Conn., of counsel.

Guggenheimer & Untermyer, New York City, for defendant Toyomenka, Inc.; Harold Baer, Jr., William J. Cohen, Howard B. Weinreich, Joel H. Kagan, New York City, of counsel.

## MEMORANDUM

FREDERICK VAN PELT BRYAN, District Judge:

The plaintiff, Remco Industries, Inc. (Remco), sues defendants Toyomenka, Inc. (Toyomenka) and Bert Gorman, Inc. (Gorman), for unfair competition and violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The complaint seeks a permanent injunction and damages. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332, and the trademark laws. 28 U.S.C. § 1338 and 15 U.S.C. § 1121.

Plaintiff has moved for a preliminary injunction enjoining the defendants, during the pendency of the action, from engaging in continued acts of unfair competition and trademark infringement.

The plaintiff, a New York corporation, manufactures and sells an extensive line of children's toys throughout the United States. The present action is concerned with one of the plaintiff's products—a small battery powered toy vehicle, sold under the trademarks "Remco" and "Mighty Mike." Also involved are three separately sold accessories for attachment to the basic vehicle. These products have been on the market since 1966.

The plaintiff's toy, called the "Mighty Mike" is a battery powered jeep, measuring about 5¼″ in length. The body of the jeep is white; the underpart black. Since there is no hood, the silvered imitation motor is plainly visible. In front of the motor there is a black grill to which are attached silvered headlights. Two silvered exhaust pipes, one on each side, extend back from the motor, toward the rear of the jeep. A white windshield frame separates the motor and the single seat cab. There are no doors on the side and no roof. Instead there are "U" shaped openings on each side of the seat. The seat itself, mounted on the white body of the jeep, is colored black and is ribbed, to simulate upholstery. An immobile white steering wheel is attached to the white dashboard. The rear portion of the jeep is box-like. On top of the rear portion there is a black spare tire. The jeep has four black tires with white rims; these are half tires, hollow on the side closest to the body. On the outside there is a small black knob or switch which is turned to set the jeep in motion.

A prominent red label is affixed to the outside of plaintiff's jeep, reading, in white and yellow lettering, "MOTORIZED MIGHTY MIKE." The lettering is in sizeable block capitals and plainly visible. In addition, the word "Remco" is stamped on the black front or grill. The words "Remco Ind. Inc." are also stamped on the underside.

In terms of function, the jeep runs on batteries and moves only in a forward direction. On the underside there is a metal chain which runs the front wheels. The vehicle is able to climb uphill and over objects.

The basic vehicle is sold as a distinct unit. The plaintiff, however, manufactures and sells separately various accessories for the jeep. Only three of the six available accessories are of any concern here—the cement mixer, the tow truck and the trailer. The cement mixer attaches to the jeep. Its drum is predominantly white, except for a bright red encircling band; the base is also bright red. The tow truck also attaches to the back of the jeep. The base is bright blue. Most of the towing mechanism is white except for a blue roller which may be hand-turned by means of a silvered cranking mechanism. Finally, a bright red trailer with prominent white side stakes is also available.

Plaintiff's product is packaged in a rectangular cardboard box. The background is white. There are a number of illustrations of the accessories on the package, and a good deal of writing.

The words "MIGHTY MIKE" and "REMCO" are prominent and each legend appears four times.

Defendants' products are sold as three complete units—a climbing jeep trailer, a climbing wrecker jeep and a climbing cement mixer. Each unit consists of a battery powered vehicle, which is the same in all units, plus one of the accessories. These accessories are removable but not separately available.

The defendants' basic jeep is about two inches longer, about one inch higher and some 40% larger than the plaintiff's. Like the plaintiff's, it is basically white in color. In the front there is a silvered exposed motor that is considerably larger than the motor on the "Mighty Mike". The details of the motor are different. There is a red fan in front of the motor which is not found on the Remco jeep. The front grill is white; plaintiff's grill is black. The basic shape of the cab is the same. Defendants' jeep has a high white windshield, and has no doors or roof. The back portion of defendants' jeep, like plaintiff's, is solid white and entirely closed.

The details of the two products differ markedly. Defendants' vehicle has no spare tire or headlights and the tires are full ones, in contrast to the half tires on plaintiff's vehicle; they have silvered rather than white rims. The seats in defendants' vehicle are red rather than black. Moreover, there are two distinct seats in the front, separated by operating levers. The steering wheel is black on a red dashboard. It is considerably larger than the steering wheel on the Remco jeep and is movable.

The color schemes of the three attachments to the defendants' vehicle are basically the same as those for the "Mighty Mike." The climbing wrecker mechanism, like plaintiff's tow truck attachment, is blue and white. However, it is larger and more detailed than the plaintiff's and operates differently. The cement mixer has the same red and white color combination as the Remco mixer. The defendants' trailer is completely red; unlike plaintiff's it has no side stakes.[1]

Although both vehicles run on batteries and are able to climb, their operations are quite dissimilar in other respects. Plaintiff's jeep runs only at one speed and in one direction. Defendants' vehicle can run both forward and in reverse at two speeds. Speed and direction are regulated by two levers between the front seats. The drive mechanism is visible on plaintiff's jeep, while the mechanism on defendants' is enclosed.

The labelling of defendants' product is not similar to that on the Remco vehicle. On the underside of the defendants' vehicle, the words "Bandai" and "Made in Japan" are embossed, as is a Bandai symbol.

The defendants' products are packaged in rectangular boxes which are different in shape and size from plaintiff's packaging. The background is red rather than white. The lettering is mainly in white, with some black. The Bandai symbol appears four times on the package and the word "Bandai" five times. In addition the package says "Made in Japan" four times. These descriptions of source are plainly visible. The descriptive names of the defendants' toys appear several times on each package. For example, on one carton the words "CLIMBING CEMENT MIXER" appear four times in prominent lettering.

Thus there are marked similarities between the two toys. But there are also marked differences in size, detail, mechanism, packaging and markings, among other things.

The gist of the plaintiff's claim of unfair competition is that the defendants have simulated the allegedly unique and non-functional design characteristics as well as the color, size and shape relationships of the Remco jeep and accessories, and that these features have acquired

1. More careful comparison of the cement mixer and the trailer is not possible for the reason that the court was not provided with samples of these two Remco attachments.

secondary meaning. It is also claimed that the defendants have palmed off their toy as that of the plaintiff.

The defendants deny that the plaintiff's product has acquired secondary meaning or that it has palmed off its product as that of plaintiff. It claims that some of the features incorporated in plaintiff's products appeared earlier in defendants' toys, and that in any event the plaintiff has failed to demonstrate that it is entitled to a preliminary injunction.

### A) Secondary Meaning

The first of plaintiff's claims for unfair competition is grounded upon the doctrine of secondary meaning. Basically, plaintiff alleges that the defendants have simulated unique, non-functional features of plaintiff's product, and that this product simulation should be enjoined because these features of the "Mighty Mike" jeep and its accessories have acquired secondary meaning.

It is clear that the toys are not identical. While the colors of the accessories are basically the same, there are differences in size, functioning, design and detail. Moreover, the plaintiff's vehicle itself imitates the real jeep which has been well-known in the automotive trade for many years. As to the exposed simulated motor on the toy, on which plaintiff lays much stress, it is not at all plain on the record before me where that idea originated.

■ Thus the issue of copying is by no means clearly weighted in plaintiff's favor. Assuming, however, that defendants' products would have the same visual impact on a consumer, it is clear that the mere manufacture and sale of an exact copy of an unpatented design does not itself constitute unfair competition. See Sears Roebuck & Co. v. Stiffel, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); Compco Corp. v. Day-Brite Lighting, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). See also Feathercombs, Inc. v. Solo Prods. Corp., 306 F.2d 251, 257 (2d Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962);

Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614, 619 (2d Cir. 1962); Pezon et Michel v. Ernest R. Hewin Associates, Inc., 270 F.Supp. 423 (S.D.N.Y.1967); Crossbow, Inc. v. Dan-Dee Imports, Inc., 266 F.Supp. 335 (S.D. N.Y.1967); Mastro Plastics Corp. v. Emenee Indus., Inc., 16 A.D.2d 420, 228 N.Y.S.2d 514 (1st Dept.), aff'd, 12 N.Y. 2d 826, 236 N.Y.S.2d 347, 18 N.E.2d 360 (1962). Plaintiff must demonstrate something more than copying in order to be entitled to relief. This it has attempted to do by urging secondary meaning.

■ In order for Remco to establish that its products have acquired secondary meaning, it must show that the design features relied upon, are "mark(s) of distinction identifying the source of the article and that purchasers are moved to buy it because of its source." Blisscraft of Hollywood v. United Plastics, 294 F.2d 694, 697 (2d Cir. 1961). See also Hygienic Specialities Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962). Moreover, the imitation complained of must be the design and not the functional elements of the product. *Hygienic Specialities,* supra at 619 n. 11.

The affidavits submitted in support of plaintiff's motion are those of Morris, Vice President of Remco, and of Adler, an employee of a licensed private investigator. These affidavits are insufficient to establish secondary meaning.

Morris states that plaintiff's vehicle has a "unique configuration and coloration that was designed to appeal to and be recognized by a child," and that the styling features and dress enable "small children to readily recognize the little vehicle as the one advertised on T. V. that has the excellent climbing function that has become so popular." Morris further states that the vehicle "is recognized by the trade and the purchasing public as a Remco product," and that "purchasers, particularly children," recognize it as a Remco product.

Finally, Morris points to the advertising and Remco's promotion campaign

for its jeep and accessories.[2] One purpose of the advertising campaign was "to teach the public that this toy was the product of Remco." Sales figures also are given.[3]

Adler's affidavit states that when he examined defendants' toys at the Toyomenka display rooms, he mentioned to Berman, the Toyomenka Sales Manager, that they looked familiar. Adler claims that Berman replied that they were copies of Remco toys and that they should look familiar since Remco did a lot of advertising of these toys.

Adler also gives the substance of a conversation with Gorman, of defendant Bert Gorman & Associates, to the effect that Gorman told Adler that the toy vehicles were good selling items because, except for size, they were copies of widely advertised, more expensive, Remco toys, and children would recognize the toys because of the advertising.

■ The defendants here dispute Adler's version of what occurred. However, even if the Adler version of what transpired at the Toyomenka showroom is accepted as true, it is far from the clear showing of probable success at trial on the issue of secondary meaning that is required before a preliminary injunction may be granted. See Societe Comptoir DeL'Industrie Cotonniere Establishments Boussac v. Alexander's Dept. Stores, Inc., 299 F.2d 33 (2d Cir. 1962). See also Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., 274 F.Supp. 157 (S.D.N.Y.1967).[4] It is nothing more

than a statement that buyers would recognize the *product* because of the advertising; no showing is made as to any connection between product and producer; nor is there any showing that purchasers are motivated to buy the product because of its source.

■ The same shortcomings appear in the Morris affidavit. Apart from the bare conclusory allegation by Morris that the public identifies the jeep and its accessories as a product of Remco, there is no showing that the public does in fact identify Remco as the source of these toys. Nor has there been any showing that consumers have been motivated to buy the toys because of their source.

■ The advertising expenditures do not establish that secondary meaning attaches to the plaintiff's products. These expenditures measure "plaintiff's effort[s] to establish a secondary meaning but do * * * not determine its success." (General Time Inst. Corp. v. United States Time Corp., 165 F.2d 853 (2d Cir.), cert. denied, 334 U.S. 846, 68 S.Ct. 1515, 92 L.Ed. 1770 (1948). See also Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., 274 F.Supp. 157 (S. D.N.Y.1967). Similarly, sales volume and popularity of plaintiff's products do not fill the gap in plaintiff's case. See Norwich Pharmacal Co. v. Sterling Drug Co., Inc., 271 F.2d 569 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960).[5] There is no showing of probable success on this issue.

2. Expenditures for advertising were approximately $700,000 in 1966, and $600,000 in 1967, and these outlays are continuing.

3. In 1966, sales at manufacturer's prices for the vehicle alone were $980,000; with accessories and kits, $2,516,000. In 1967 sales for the vehicle alone were $832,000; for accessories and kits, $5,568,000.

4. Since there has been no clear showing of probable success on the secondary meaning issue, it is unnecessary for the court to decide whether plaintiff has shown, as it must before a preliminary injunction is granted, the likelihood of irreparable injury.

5. The effect of the Supreme Court's decision in Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 238, 84 S. Ct. 779 (1963), upon the secondary meaning doctrine, has been the subject of considerable speculation. See generally Symposium, Product Simulation: A Right or a Wrong? 64 Colum.L.Rev. 1178 (1964); Note, Unfair Competition Protection After *Sears* and *Compco*, 40 N.Y.U.L. Rev. 101 (1965). However, in the light of my finding that the plaintiff has, in any event failed to establish secondary meaning, it is unnecessary to reach the question of the effect of *Compco* on the secondary meaning doctrine.

## 954

### B) *Palming Off*

Plaintiff contends that even absent secondary meaning actionable palming off has been shown.

█ Palming off is an attempt by one person to induce customers to believe that his products are actually those of another. See Pezon et Michel v. Ernest R. Hewin Associates, Inc., 270 F.Supp. 423 (S.D.N.Y.1967). See also Hygienic Specialties v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962); Crossbow, Inc. v. Dan Dee Imports, Inc., 266 F.Supp. 335 (S.D.N.Y.1967). It has been said that "traditionally a plaintiff complaining of 'palming off' must prove the perpetration of fraud, 'i. e., that the defendant is so foisting his product on the market that there is resulting confusion or likelihood of confusion as to its source in the mind of the buying public.' Speedry Prods. Inc. v. Dri-Mark Prods., Inc., 271 F.2d 646 (2d Cir. 1959)." Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d at 621.

One of the most obvious forms of passing off occurs when the copier of an article overtly and explicitly misrepresents its source. See, e. g., Bristol Myers Co. v. R. H. Macy & Co., 151 F.Supp. 513 (S.D.N.Y.1957), where defendant, inter alia, substituted its product for plaintiff's when customers specifically asked for plaintiff's product. The plaintiff relies upon Adler's affidavit to show that the defendants have engaged in this kind of misconduct.

█ Even if the facts as stated by Adler (and disputed by defendants) are taken as true, they do not show palming off. Adler at all times knew that the defendants' products were not those of Remco; all that is claimed is that Berman and Gorman indicated that Remco had advertised its toys widely and that these toys were well known to children.[6] No affirmative showing has been made that the defendants have overtly passed off their product as that of plaintiff.

Plaintiff urges another and related basis for its claim of palming off. Remco contends that the non-functional features of plaintiff's products have been copied by the defendants, that the products are confusingly similar, and that in such circumstances the intent to deceive and confuse customers is presumed.

On the facts of this case, viewed in light of the decisions in the companion cases, Sears Roebuck & Co. v. Stiffel, 376 U.S. 225, 84 S.Ct. 784 (1964), and Compco Corp. v. Day-Brite Lighting, 376 U.S. 234, 84 S.Ct. 779 (1964), the plaintiff has not shown that it is entitled to relief on any palming off theory.

As was noted earlier, *Sears* and *Compco* held that the copying of an unpatented article, whatever the copier's motives, was not as such actionable.[7] Moreover, the court expressly recognized that "mere inability of the public to tell two identical articles apart is not enough to support an injunction against copying or an award of damages for copying that which the federal patent laws permit to be copied." Sears Roebuck & Co. v. Stiffel Co., supra, 376 U.S. at 232, 84

---

6. These are the same statements by Berman and Gorman that plaintiff relies on to show secondary meaning.

7. The court's disapproval of any motives test is brought into even sharper focus by the concurring opinion, applicable to both *Sears* and *Compco*, of Mr. Justice Harlan. He wrote:

"In one respect I would give the States more leeway in unfair competition 'copying' cases than the Court's opinions would allow. If copying is found, other than by an inference arising from the mere act of copying, to have been undertaken with the dominant purpose and effect of palming off one's goods as those of another or of confusing customers as to the source of such goods, I see no reason why the State may not impose reasonable restrictions on the future 'copying' itself. Vindication of the paramount federal interest at stake does not require a State to tolerate such specifically oriented predatory business practices." Compco Corp. v. Day-Brite Lighting, Inc., supra at 239, 84 S.Ct. at 782 (concurring opinion).

S.Ct. at 789. The Court stated, however, that the patent laws

"do not stand in the way of state law, statutory or decisional, which requires those who make and sell copies to take precautions to identify their products as their own. A State of course has power to impose liability upon those who, knowing that the public is relying upon an original manufacturer's reputation for quality and integrity, deceive the public by palming off their copies as the original." Compco Corp. v. Day-Bright Lighting, Inc., supra, 376 U.S. at 238, 84 S.Ct. at 782.

That this area of State regulation was being sharply limited is made clear by the next sentence:

"That an article copied from an unpatented article could be made in some other way, that the design is 'non-functional' and not essential to the use of either article, that the configuration of the article copied may have a 'secondary meaning' which identifies the maker to the trade, or that there may be 'confusion' among purchasers as to which article is which or as to who is the maker, may be relevant evidence in applying a State's law requiring such precautions as labeling; however, and regardless of the copier's motives, neither these facts nor any others can furnish a basis for imposing liability for or prohibiting the actual acts of copying and selling." Compco Corp. v. Day-Brite Lighting, Inc., supra at 238, 84 S.Ct. at 782.

When Compco and Sears are applied to the facts of this case, it is quite clear that the plaintiff has attempted to attach greater consequences to defendants' alleged copying than the law permits. The inference of intent to deceive that plaintiff seeks to draw from copying is not a permissible one and plaintiff's theory that palming off may be inferred from mere copying is erroneous. Plaintiff's reliance on Distillerie Filli Ramazzotti, S.P.A. v. Banfi Prods. Corp., 52 Misc.2d 593, 276 N.Y.S.2d 413 (S.Ct. 1966), aff'd, 27 A.D.2d 905, 280 N.Y.S. 2d 892 (1st Dep't 1967), is misplaced. In that case the intent to deceive was presumed from the defendant's copying of plaintiff's label, rather than plaintiff's product.

Compco also makes it clear that the inability of consumers to tell two products apart does not provide a basis for the relief sought by plaintiff. Rather the focus is upon whether the facts, if shown, of confusion, secondary meaning and the like make applicable a state's law requiring such precautions as labelling. Here, the defendants have labelled their product, and have in no way simulated the plaintiff's label or packaging. In these circumstances there is no support for the plaintiff's claim of palming off.

The New York State and federal cases arising after Sears and Compco are in accord with the conclusion reached here. Where injunctive relief has been granted, a great deal more than copying was shown. Thus, in Crossbow, Inc. v. Dan Dee Imports, Inc., 266 F.Supp. 335 (S.D. N.Y.1967), the court reaffirmed the rule that exact copying as such was not actionable. However, the defendant's product copying was accompanied by copying of plaintiff's packaging, use of plaintiff's product as a demonstration model, and acceptance of orders for plaintiff's product by defendant's salesmen. The court found that the combination of these acts evidenced "intentional conduct by the defendant to 'palm off' its goods as those of plaintiff."

On the other hand, injunctive relief has been denied where product copying was not accompanied by other practices such as those present in the Crossbow case. See, e. g., Bercy Industries, Inc. v. Mechanical Mirror Works, Inc., 274 F.Supp. 157 (S.D.N.Y.1967); Brumberger Co., Inc. v. Chadwick Miller Importers, Inc., 267 F.Supp. 190 (D.Mass.1967); Kingsway, Inc. v. Werner, 233 F.Supp. 102 (E.D.Mo.1964); Wolf & Vine, Inc. v. Pioneer Display Fixture Co., 142 U.S. P.Q. 112 (N.Y.Sup.Ct.1964).

The facts of this case show no more than a similarity between the appear-

ance of plaintiff's and defendants' products. Even if it be assumed that customers would not be able to distinguish these products, under *Compco* and *Sears* this does not give plaintiff a right to injunctive relief. There is no evidence here of any affirmative attempts by plaintiff to palm off its product, nor is palming off or consumer confusion inevitable, particularly in light of the differences in labelling and packaging. There is no probability of success on the palming off claim.

Plaintiff has also failed to show any probability of success on its claim under § 43 of the Lanham Act.[8]

Plaintiff's motion for a preliminary injunction is in all respects denied.

The foregoing opinion constitutes my findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P.

It is so ordered.

---

8. The cases on which plaintiff relies in pressing its Lanham Act claim are clearly distinguishable. They involved either the use of photographs of plaintiff's product by the defendant, see Zandelin v. Maxwell Bentley Mfg. Co., Inc., 197 F.Supp. 608 (S.D.N.Y.1961), or use of the plaintiff's product as a demonstration model, see Crossbow, Inc. v. Dan Dee Imports, Inc., 266 F.Supp. 335 (S.D.N.Y.1967), or other predatory conduct.